# In the United States Court of Federal Claims

No. 17-129C

(Filed Under Seal: April 19, 2017)

(Reissued for Publication: April 27, 2017)[1]

```
************************************
                                   *
THE CONCOURSE GROUP, LLC,          *
                                   *
              Plaintiff,           *
                                   *
                                   *   Post-Award    Bid    Protest;
v.                                 *   Standard   of   Review   for
                                   *   Agency's Technical Evaluation
THE UNITED STATES,                 *   of    Proposals;    Unstated
                                   *   Evaluation   Criteria;   Formal
              Defendant.           *   Requirements in a FAR Subpart
                                   *   8.4 Procurement.
and                                *
                                   *
RER SOLUTIONS, INC.,               *
                                   *
              Defendant-Intervenor. *
************************************
```

*Robert Nichols*, Nichols Liu LLP, Washington, D.C., for Plaintiff.

*Anthony F. Schiavetti*, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglas K. Mickle*, Assistant Director, *Christopher J. Carney*, Senior Litigation Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, as well as *Scott N. Flesch*, Chief, Bid Protests, and *Major Stephen P. Smith*, Trial Attorney, U.S. Department of the Army, Washington, D.C., for Defendant.

---

[1] The Court issued this decision under seal on April 19, 2017, and invited the parties to submit proposed redactions of any proprietary, confidential, or other protected information on or before April 27, 2017. None of the parties proposed any redactions. Thus, the Court reissues the opinion in full.

*Keir X. Bancroft*, with whom were Christopher G. Griesedieck and *J. Scott Hommer, III,* Venable, LLP, Washington, D.C., for Defendant-Intervenor.

OPINION AND ORDER

WHEELER, Judge.

The parties in this post-award bid protest have filed cross-motions for judgment on the administrative record pursuant to Rule 52.1 of the Court of Federal Claims ("RCFC"). Plaintiff Concourse Group, LLC, the losing bidder on a military housing privatization initiative ("MHPI") contract, alleges primarily that the Government applied an unstated criterion while evaluating bids: namely, that the bidder must have experience specifically with the Army's MHPI program. The Defendant-Intervenor and contract awardee, RER Solutions, LLC, has such experience by virtue of its relationship with Jones Lang LaSalle ("JLL"), the incumbent contractor. Concourse does not.

If there were evidence that the Army implicitly required Army-specific MHPI experience, then the bidding process would have been unfairly skewed in favor of RER. After considering the parties' arguments and the administrative record, the Court has found no such evidence. Accordingly, the Government's and RER's cross-motions for judgment on the administrative record are GRANTED, and Concourse's motion is DENIED.

Background

A.    The Army Begins the Solicitation

On July 20, 2015, the United States Army Mission and Installation Contracting Command ("Army") began the solicitation at issue in this case by issuing Request for Quotations Number W9124J-15-R-0064. AR Tab 3. The solicitation sought various financial, real estate, and consulting support services in connection with the Army's MHPI program. Id. at 11. In the solicitation, the Army announced that it would award a firm fixed-price contract to the bidder who submitted the lowest-priced technically acceptable proposal. Id. at 76.

The Army intended to evaluate proposals on three factors: technical capability, past performance, and price. Id. at 76–77. The technical capability factor in turn had four subfactors: (1) corporate experience; (2) understanding of the Army MHPI program; (3) staffing plan/qualifications of key personnel; and (4) quality control approach. Id. at 77–80. These subfactors unfolded into several "elements." Id. The Army would assign a technical acceptability rating to each respective layer of the solicitation's Russian doll. The solicitation explicitly stated that "[t]o receive a rating of Acceptable, ALL Elements of the Subfactors must receive a rating of Acceptable. An unacceptable rating in any element, subfactor or factor will result in an overall rating of unacceptable." Id. at 80.

2

The solicitation also set out a tiered approach that the Army would use in evaluating bids (pursuant to Defense Federal Acquisition Regulation Supplement (DFARS) § 215.203-70).  Id. at 76.  The tiered approach would favor small businesses over large ones.  Id.  JLL, the incumbent contractor, is not a small business, and it filed three protests with the Government Accountability Office ("GAO") that challenged several aspects of the solicitation, including the tiered approach.  See AR Tabs 8, 27, 32.  The Army took corrective action in response to the first protest, and the GAO dismissed the second and supplemental protests.  See AR Tabs 17, 19, 20.

B.      Concourse, RER, and JLL Submit Proposals

Concourse, JLL, and RER submitted initial proposals in response to the solicitation.  AR Tabs 9 (Concourse), 10 (JLL), 11 (RER).  The Army rated Concourse's technical proposal unacceptable overall, as well as unacceptable for subfactors 1, 2, and 3; for two of the ten elements of subfactor 1 (corporate experience); for fourteen of the twenty-one elements of subfactor 2 (understanding of the MHPI program); and for three of the four elements of subfactor 3, staffing plan and key personnel.  See AR Tab 13.  The Army rated RER's technical proposal acceptable in its entirety (and for all subfactors and elements).  See AR Tab 15.

The three bidders submitted revised proposals in response to solicitation amendments on November 18, 2015.  AR Tabs 23 (Concourse), 24 (RER), 25 (JLL).  The Army again rated Concourse's technical proposal unacceptable overall, as well as for subfactors 1, 2, and 3; for two of the ten elements of subfactor 1; for fourteen of the twenty-one elements of subfactor 2; and for three of the four elements of subfactor 3.  See AR Tab 28.  The Army again rated RER's technical proposal acceptable in its entirety.  See AR Tab 29.

After these first two proposal rounds, the Army began discussions with both parties.  It issued evaluation notices ("ENs") to Concourse and RER.  AR Tabs 37, 38.  Concourse received twenty-one ENs, and RER received one.  AR Tabs 37, 38.  Both parties responded, and the Army evaluated the EN responses.  AR Tabs 40, 41, 41a.  The Army then submitted a second round of ENs that incorporated the Army's position with respect to each EN.  AR Tabs 42, 43.  Again, both parties responded to the ENs, and the Army evaluated the responses.  AR Tab 44.

On June 29, 2016, the Army issued Amendment 0007 to the solicitation, thereby allowing the bidders to submit final proposal revisions (FPR).  AR Tab 46.  The Army also notified Concourse by letter that its proposal remained unacceptable, and included a consolidated copy of the Army's technical evaluations of Concourse's EN responses.  Id.

Concourse filed a pre-award bid protest with the GAO on July 8, 2016, alleging primarily that the Army was requiring Army-specific MHPI experience in the solicitation. AR Tab 47.  The Army decided to take corrective action on July 19, 2016 by clarifying solicitation language, and the GAO dismissed the protest as moot.  AR Tabs 48, 50.  The amended solicitation made clear that non-Army-specific MHPI experience would be sufficient.  Still, it included language in factor 2, subfactor 1 that required offerors to "provide a comprehensive narrative which explains how [non-Army MHPI] experience on similar projects relate[s] and ties back to the Army's MHPI program for the subfactor 1 elements listed below[.]"  AR Tab 51 at 3558.50.  For subfactor 2, the amended solicitation required that, "[w]hen using Air Force, Navy and Marine Corps MHPI equivalents while addressing the subfactor elements below[,] offerors are required to relate their understanding of those programs to the Army's MHPI program and explain how it is applicable to their ability to successfully support the Army's MHPI program."  Id. at 3558.51.

C.      The Army Selects RER's Proposal, and Concourse Protests at the GAO

Concourse submitted its FPR on August 12, 2016.  AR Tab 53.  RER confirmed that its previously submitted FPR remained valid.  Tabs 54-54f.  The Army finished its final technical evaluations of the FPRs on August 19, 2016.  AR Tab 60 at 4432.  Concourse's evaluation improved in several areas, and the Army rated elements of subfactors 1 and 2 acceptable that it had previously rated unacceptable.  AR Tab 60 at 4440–42.  Still, subfactors 1 and 2 of Concourse's FPR remained unacceptable, so the Army rated Concourse's FPR unacceptable.  AR Tab 55.  Specifically, the Army rated one element of subfactor 1 and twelve elements of subfactor 2 unacceptable.  Id. at 4134.1–5.

With Concourse's proposal rated unacceptable, RER was the only tier-one bidder with an acceptable proposal.  Therefore, the Army awarded Task Order Number W9124J-16-F-0049 to RER on September 15, 2016.  AR Tab 60 at 4455–56.

At Concourse's request, the Army provided a post-award debriefing on September 24, 2017.  AR Tab 64.  After the debriefing, Concourse filed a post-award protest at the GAO on September 30, 2016.  See AR Tab 65.  Concourse's post-award protest again alleged that the Army applied an unstated evaluation criterion that required Army MHPI experience.  Id. at 4552.  It also included three more grounds: (1) that the Army's evaluation of Concourse under subfactors 1 and 2 was unreasonable; (2) that the Army treated Concourse disparately compared to RER; and (3) that the Army's discussions with Concourse were inadequate.  Id.  The GAO found against Concourse on all of the protest grounds, and therefore denied the protest.  See Tab 68.

D.   Procedural History

After its GAO protest was unsuccessful, Concourse filed a post-award bid protest in this Court on January 30, 2017.  Concourse's protest grounds were nearly the same as those it advanced in the GAO protest, with one exception: Count 1 of Concourse's complaint alleged that an organizational conflict of interest (OCI) had marred the solicitation.  See Compl., Dkt. No. 1, at 20–21.  Counts 2 through 4 were essentially identical to the GAO protest grounds.  Count 2 alleged that the Army had evaluated the proposals "arbitrarily, irrationally, and disparately."  Id. at 21–22.  In Count 3, Concourse alleged that "the Army engaged Concourse in inadequate and misleading discussions."  Id. at 22–23.  Finally, in Count 4, Concourse alleged that the Army treated Concourse disparately.

On March 3, 2017, the Court dismissed Concourse's OCI claims.  See Concourse Grp., LLC v. United States, — Fed Cl. —, 2017 WL 961812, at *4.  The Court found that Concourse had waived these claims by failing to raise them prior to the close of the bidding process.  Id. at *3–4.  Therefore, the parties briefed only Counts 2 through 4 in their respective cross-motions for judgment on the administrative record.[2]  Concourse filed its motion on March 3, 2017.  See Dkt. No. 32.  The Government and RER filed their cross-motions on March 17, 2017.  See Dkt. Nos. 39, 40.  The Court held oral argument on the cross-motions on April 5, 2017.

Discussion

A.   Standard of Review

The Tucker Act grants this Court subject matter jurisdiction over bid protests.  28 U.S.C. § 1491(b)(1) (2012).  In a bid protest, the Court reviews an agency's decision pursuant to the standards set out in the Administrative Procedure Act ("APA").  28 U.S.C. § 1491(b)(4) (2012); 5 U.S.C. § 706 (2012).  Under the APA, this Court shall set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A) (2012); see Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350–51 (Fed. Cir. 2004).  An agency's decision does not violate the APA if the agency "provided a coherent and reasonable explanation of its exercise of discretion."  Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001).  Further, an agency must articulate a "rational connection between the facts found and the choice made."  Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (citation omitted).  The Court's review is "highly deferential" to the agency as long as the agency has rationally

---

[2] Concourse has cited no separate evidence to support its disparate treatment count (Count 4).  If anything, Concourse appears to fold Count 4 into its main argument that the Army required Army-specific MHPI experience.

explained its award decision.  Bannum, Inc. v. United States, 91 Fed. Cl. 160, 169–70 (2009).

Even if the agency acted without a rational basis, the Court cannot grant relief unless the agency's action prejudiced the protestor.  Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005).  Erroneous agency action prejudices a protestor if, but for the agency's error, there was a "substantial chance" that the agency would have awarded the contract to the protestor.  Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir. 1999) (internal citation omitted); see also Bannum, 404 F.3d at 1353.

Therefore, to prevail, Concourse must show (1) that the Army engaged in arbitrary and capricious conduct; and (2) that there was a substantial chance that Concourse would have received the contract but for the Army's conduct.  Concourse argues that the Army acted arbitrarily and capriciously by evaluating bidders based on an unstated criterion: whether the bidder had Army MHPI experience.  It also argues that the Army's discussions with Concourse were not meaningful, and that the Army failed to consider documents Concourse provided over the course of these discussions.  In the absence of these errors, Concourse argues, there was a substantial chance it would have received the contract.  The Court will consider each of these arguments in turn.

B.    Concourse has not Shown That the Army's Technical Evaluation Lacked a Rational Basis

The highly deferential standard of review in bid protests described above places a heavy burden on a protestor that challenges an agency's technical evaluation of proposals.  Indeed, "the evaluation of proposals for their technical excellence or quality is a process that often requires the special expertise of procurement officials, and thus reviewing courts give the greatest deference possible to these determinations."  Beta Analytics Int'l, Inc. v. United States, 67 Fed. Cl. 384, 395 (2005).  This level of deference certainly applies in this case, as the Court is not the Army, and is therefore ill-equipped to substitute its own opinions on military housing adequacy for the Army's.  Therefore, the protestor must show, by a preponderance of the evidence, that there was no rational basis for the agency's technical evaluation.  Id.

Concourse first alleges that the Army applied the unstated criterion in its evaluation under factor 1 (technical capability) that the bidder must have Army-specific MHPI experience.  An unstated criterion would certainly constitute irrational conduct.  See Acra, Inc. v. United States, 44 Fed. Cl. 288, 293 (1999).  In its argument, Concourse first points to the solicitation requirements for subfactors 1 (Corporate Experience) and 2 (Understanding the Department of Defense (DOD) MHPI Program (Army, Air Force, Navy, and Marine Corps MHPI Equivalent)).  Both subfactors permit bidders to demonstrate their experience by showing Army or equivalent DOD MHPI experience.  AR Tab 3 at 77–78.  Concourse then looks to the Army's technical evaluation of Concourse's

proposal, which frequently faults Concourse for failing sufficiently to explain how its non-Army MHPI experience relates to various aspects of the Army's MHPI program. Concourse cites the following examples (among others):

- "The Navy has not privatized lodging."  AR Tab 55 at 4134.1.

- "On page 8, [Concourse] states they demonstrate experience and understanding for this subfactor for their RESS with the Air Force.  However, the Army lodging privatization is not a EUL."  Id.

- "The Army's major decision process is a unique [sic] to the Army's privatization projects. The Offeror list[s] experience with deal structures and restructuring but fails to relate that experience to how it could be used to support the Army's program."  Id. at 4134.4.

- "[Concourse] was found to be technically unacceptable because they [sic] failed to relate their expereinces [sic] with lodging EUL to the Army's PAL program.  The Army is the only service to privatize lodging the MHPI Program."  Id.

- "Each of the Services have [sic] privatized their housing differently under the same MHPI authority which means the impact of the security markets, interest rates, and underwriting will be different." Id. at 4134.5

- "The Army has a large number of historic properties in the inventory with programmatic agreements for management of the historic properties." Id.

See Pl. Mot. at 16, Dkt. No. 32.

Still, even a cursory glance at the Army's technical evaluation shows that the Army did not reject Concourse outright because it lacked Army experience; rather, it rejected Concourse because Concourse failed to explain in sufficient detail how its non-Army experience made it a good match for the Army's MHPI program.  The evaluation factors explicitly required Concourse to provide such an explanation.  For example, the evaluation factors for subfactor 1 required offerors to "provide a comprehensive narrative which explains how [their] experience on similar projects relate[s] and ties back to the Army's MHPI program for the subfactor 1 elements. . . ."  AR Tab 52 at 3560.50.  The evaluation factors for subfactor 2 similarly cautioned:

> NOTE: When using Air Force, Navy and Marine Corps MHPI equivalents while addressing the subfactor elements below offerors are required to relate their understanding of those

> programs to the Army's MHPI program and explain how it is
> applicable to their ability to successfully support the Army's
> MHPI program.

Id. at 3560.51.  In sum, the terms of the solicitation permit bidders to use non-Army MHPI
experience to satisfy subfactors 1 and 2 of factor 1, but they require bidders to explain in
detail how their experience "relates" and "ties back" to the Army's program.

The Army plainly believed Concourse did not "tie back" its non-Army experience
to the Army's MHPI program.  For example, the technical evaluation for element 1(d),
from which Concourse picks the first two statements above, shows that Concourse did not
sufficiently explain how its experience was relevant for this element (the statements
Concourse cites are italicized):

> [Concourse] states their skills sets are directly transferable to
> each of the Services whose programs are based on the same
> authorities.  It is not sufficient to state the Services follow the
> same authority; they need to tie their experience with the Navy
> to the Army.  PAL is mentioned in the opening sentence but
> Offeror AA does not provide any description of the MHPI asset
> manager responsibilities for the Navy and Marine Corps in this
> section.  *The Navy has not privatized lodging.  On page 8,*
> *[Concourse] states they demonstrate experience and*
> *understanding for this subfactor for their RESS with the Air*
> *Force.  However, the Army lodging privatization is not a EUL.*
> [Concourse] experience described for the Air Force mentions
> lodging privatization and describes the privatization of one
> location on building a privately financed hotel on AF owned
> land.  However, there are no details outside this one aspect of
> privatized lodging that relates to the Army's privatized lodging
> program.  The other bases mentioned are through EUL which
> is completely different than the PAL program.  The Army's
> PAL program is past the initial concept and funds distribution
> which is where [Concourse's] experience as it relates to PAL
> stops.

Id. at 4134.1.  In this representative response, the Army acknowledges Concourse's attempt
at "tie back," but rationally explains that this attempt is too threadbare to be acceptable.
However, it does not fault Concourse for failing to have Army experience.

The rest of the administrative record likewise shows no ironclad preference for Army experience. The GAO's opinion on these same issues is instructive here.[3] For example, it noted that, in response to the twenty-one elements of subfactor 2, Concourse relied primarily on a table that included cross-references to a second table it had prepared to address subfactor 1 (corporate experience). See AR Tab 68 at 7384 (GAO Opinion); AR Tab 53 at 3561.191–215 (subfactor 1 table); 3561.272–75 (subfactor 2 table). However, "many of the evaluation criteria references in [the subfactor 2 table] point to corporate experience entries or management plan sections that provide only cursory discussion of the subfactor [2] elements or no discussion at all, and fail to relate Concourse's non-Army experience to the Army's unique MHPI programs." Id. The Court has reviewed these same materials, and has come to the same conclusion. As the GAO noted, many of the cross-references in the subfactor 2 chart point to areas of the subfactor 1 chart that simply recount Concourse's past engagements without discussing the subfactor 2 elements in much detail. As a result, the Court believes that the Army's technical evaluation responded to Concourse's failure to relate its non-Army experience to the Army's MHPI program. The evaluation does not show bias against non-Army MHPI experience.[4]

### C.    Concourse has not Shown That the Army's Discussions were Unfair

The Army conducted its solicitation under the Federal Supply Schedule (FSS), which is governed by FAR Subpart 8.4. See AR Tab 52 at 3560.38. However, Concourse appears to argue that the Army was required to hold "meaningful" discussions as required under FAR Part 15. See Pl. Mot. at 19, Dkt. No. 32. Courts have regularly recognized that "procurements conducted under [FAR] Subpart 8.4 are different from those conducted under Part 15, even if some procedures also present in Part 15 are utilized." Allied Tech. Grp., Inc. v. United States, 94 Fed. Cl. 16, 44 (2010), aff'd, 649 F.3d 1320 (Fed. Cir. 2011) (citations and internal punctuation omitted). Part 15's "more formal and rigorous" requirements do not apply to a FAR Subpart 8.4 procurement. Id. (citations omitted). Therefore, the Court does not look to a "meaningful discussions" standard, as Concourse suggests; rather, the protestor "must demonstrate that the agency's procedures were arbitrary and capricious." Id. (citation omitted). As such, "[a]lthough FAR Part 15 does not apply, the Court will review [an agency's] actions" in conducting discussions "to ensure they comply with FAR's requirement of fundamental fairness in the procurement

---

[3] While this Court is not obliged to follow the GAO's ruling, the Court typically "gives due weight and deference to GAO recommendations given the GAO's long experience and special expertise in such bid protest matters." CMS Contract Mgmt. Servs. v. Massachusetts Hous. Fin. Agency, 745 F.3d 1379, 1384 (Fed. Cir. 2014) (citation and internal punctuation omitted).
[4] Furthermore, the Army changed Concourse's technical acceptability rating from unacceptable to acceptable in subfactor elements (1)(a), (2)(l), and 2(n) in its final evaluation, as well as in subfactor 3. See GAO Op., Tab 68 at 7388. This change also belies the notion that the Army was evaluating subfactor elements on a binary Army/non-Army scale.

process." <u>Distributed Sols., Inc. v. United States</u>, 106 Fed. Cl. 1, 16 n.9 (2012), <u>aff'd</u>, 500 F. App'x 955 (Fed. Cir. 2013) (citation omitted).

The Court finds that the Army's discussions were fair.  First, as the Government notes, the discussions could only have benefited Concourse.  <u>See</u> Def. Mot. at 25, Dkt. No. 40.  The Army had rated RER's proposal acceptable in its entirety, <u>see</u> AR Tab 38 at 2991, so discussions could only have helped Concourse improve its proposal.

Second, the Army did not submit "generic" Evaluation Notices ("ENs") to Concourse.  Rather, the administrative record shows that the Army gave Concourse detailed suggestions as to how Concourse might improve its proposal.  For example, the Army's recommendation in subfactor element 2(a) states:

> The SSEB found that [Concourse's] proposal lacks sufficient information to demonstrate how the contractor shows experience with Projects under Army MHPI Authority in dealing with the ability to respond to changes in the Basic allowance for housing, stationing, Army resizing, etc. to analyze the results as they affect Army projects.  These requirements include assisting and advising Government in developing a position when meeting with and negotiating with Wall Street investment bankers, rating agencies, insurance and surety providers, bond holders representatives and other relevant private sector parties in order to mitigate (or take advantage of) exigencies associated with these externally driven events for Army privatized housing and privatized lodging."

AR Tab 42 at 3028.  Just this statement gave Concourse notice of avenues it could take to address the Army's concerns (for example, providing information that related to the "requirements" referenced in the EN).  The ENs are filled with such recommendations. <u>See generally</u> AR Tab 42.

Third, Concourse fails to recognize that it revised its proposal in response to the Army's ENs, which caused the Army to change its evaluation of six different elements from unacceptable to acceptable.  <u>See</u> AR Tab 60 at 4440–42.  This fact alone shows that the Army conducted fair discussions.  If the discussions were unfair and the Army's responses were generic, then it would follow that Concourse's evaluation would not change after the discussion rounds.

Finally, the thrust of Concourse's argument appears to be that any discussions would have been meaningless because the Army was always going to award the contract to the bidder with Army MHPI experience (RER).  If this were the case, then a lack of meaningful

discussions would not have prejudiced Concourse, as any improvement in Concourse's proposal would have been for naught.  Because Concourse's "meaningful discussions" argument is therefore intertwined with its "unstated criterion" argument, Concourse cannot demonstrate any prejudice that a lack of meaningful discussions could have created.  See JWK Int'l Corp. v. United States, 279 F.3d 985, 988 (Fed. Cir. 2002) (noting that a protestor must demonstrate a "substantial chance" it would have received an award had the agency not erred). [5]  Therefore, the Court finds that Concourse has not shown any unfairness or prejudice in the Army's discussion process.

Conclusion

In sum, the Court finds that Concourse has not shown that the Army's technical evaluation lacked a rational basis, or that the Army conducted unfair discussions.  Concourse's motion for judgment on the administrative record is therefore DENIED.  Similarly, Concourse's request for a permanent injunction is also DENIED.  The Government's and RER's motions for judgment on the administrative record are GRANTED.  The Clerk is directed to enter judgment for the Government and RER, and to dismiss this case.  Pursuant to RCFC 54(d), the Court awards reasonable costs to the Government and RER.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge

---

[5] Concourse also argues that the Army "overlooked" its EN responses in evaluating its final proposal.  See Pl. Mot. at 22, Dkt. No. 32.  This argument is meritless.  The solicitation set out terms and page limits for proposals, see AR Tab 52 at 3560.40–41, and those limits did not allow Concourse to incorporate hundreds of pages of EN responses by reference.  Furthermore, Concourse waived this argument by first raising it in its motion, rather than in its complaint.  See McVey Co. v. United States, 111 Fed. Cl. 387, 399 n.10 (2013).